# G. GILBERT LOWE v. CALEDONIAN - AMERICAN INSURANCE COMPANY, INC. —324 S. W. (2d) 420.

Middle Section. February 27, 1959.

Certiorari denied by Supreme Court June 5, 1959.

Howard F. Butler, Nashville, for G. Gilbert Lowe.

Marshall & Blackmon, Nashville, for Caledonian-American Ins. Co., Inc.

FELTS, J. This suit was brought in the General Sessions Court by G. Gilbert Lowe to recover $550 for loss under a policy insuring his house against, among other perils, "direct loss by windstorm * * *." There was a judgment in favor of defendant, Caledonian-American Insurance Company, Inc.; and plaintiff appealed to the Circuit Court where the case was tried by the Circuit Judge, without a jury. That Court found the issues in favor of plaintiff and entered judgment for him for $550 and costs.

Defendant insurance Company saved a bill of exceptions, appealed, and has assigned errors insisting that there was no evidence of any "windstorm" on the occasion of the loss; that the Court erred in finding there was a "windstorm" causing the loss sued for; and that the evidence preponderated against the Court's finding and showed that the loss was caused not by "windstorm" but by collapse of a stone wall, owing to its poor construction and maintenance and its inherent weakness.

While a case like this is heard here *de novo* upon the record of the Trial Court, still the judgment comes here supported by a presumption of its correctness, unless the evidence preponderates against it (T. C. A. sec. 27-303); and the burden is upon the appellant to show that the evidence does preponderate against it. Jackson v. Jackson, 25 Tenn. App. 198, 202, 154 S. W. (2d) 979; Morrell v. Republic Fire Ins. Co., 168 Tenn. 137, 140, 76 S. W. (2d) 317.

There is little or no conflict in the evidence. Gilbert Lowe owned a stone veneer dwelling house on a farm in Davidson County. He had built the house in 1941, and finished the rock work in 1945. On September 19, 1956,

defendant issued to Lowe a policy for five years, or until September 19, 1961, insuring this house in the sum of $8,000 against certain perils, including "direct loss by windstorm, hail, explosion, riot, * * * etc."

He continued to carry this insurance and the policy was in force when the loss occurred on the night of September 13, 1957. The house was then occupied by plaintiff's father and mother. Mr. Lowe Sr. testified that when he came home that day about 5 p. m., it was raining and "the wind was blowing", and it continued to rain and the wind kept on blowing until the stone wall in one end of the house fell down about 9:30 that night; and in several parts of his testimony he refers to this wind as a "storm".

Plaintiff introduced as a witness Mr. Clarence Shaub, a weather expert, chief of the National Guard weather station at Berry Field, and he testified that during the 12th and 13th of September 1957, the area of middle Tennessee and southern Kentucky was covered by "tropical air" from the gulf of Mexico which was very "unstable" and caused thunderstorms and windstorms during that period; and he submitted the daily weather maps made at Berry Field for these two days showing these conditions.

He testified that these showers and storms were scattered, each being of small diameter covering only a small area. He said that while the observations at Berry Field for this period showed that the wind had varied from 19 miles per hour to as low as five miles per hour, this did not indicate that there were no storms of greater force only a few miles away from Berry Field or in the vicinity

of plaintiff's house, which was some 10 miles to the northwest. With reference to this, he said:

"Q. All right, would you explain how that occurred, why it occurred.

"A. Yes, sir, actually the thunder showers are just a prelude to tornadoes, the same type of thing. They will, the air will be unstable and a mountain will cause it to lift or a high temperature on the surface will cause it to lift and the air rises and the rain falls out and leaves, releases its energy and thus causes it to extend still higher and that causes a vacuum on the ground which starts the wind—the air rushes in to fill the vacuum—and that is the wind blowing" (B.E. p. 17).

Taking this testimony with that of Mr. Lowe, Sr., that at the time the wall collapsed, and for sometime before, "the wind was blowing" in a "storm", the Trial Judge concluded that the evidence justified the finding that the wind has assumed "the aspect of a storm"; "that is an outburst of tumultuous force", so as to be a "windstorm" within the meaning of the policy. Lunn v. Indiana Lumbermen's Mut. Ins. Co., 184 Tenn. 584, 591, 201 S. W. (2d) 978, 981, 171 A. L. R. 259.

It appears from the testimony of Mr. Lowe, Sr., that while the wall "had been cracked for a *number of years*", nevertheless, "it had been standing there about 16 or 17 years". That is, it had long been in the same condition in which the insurer had accepted the risk and insured it against the peril of a windstorm, and it had withstood all previous perils until it was subjected to this windstorm in which it fell.

■ In view of these circumstances, the Trial Judge found that the wall did not fall of its own accord but was caused to fall by the force of the "windstorm", one of the perils covered by the policy. Upon full consideration, we are of the opinion that this finding of the Trial Judge is well supported by the evidence and we concur in it.

All of the assignments of error are overruled, the judgment of the Circuit Court is affirmed, and judgment will be entered here for plaintiff against defendant and the surety on its appeal bond for the amount of the judgment below, with interest, and the costs.

Hickerson and Shriver, JJ., concur.