Marty O'Shea FRANKLIN,
Plaintiff-Appellee,
Cross-Appellant,

v.

Max AYCOCK, et al.,
Defendants-Appellants,
Cross-Appellees.

Nos. 85–5040, 85–5072.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1986.

Decided July 15, 1986.

N. Alan Lubin, Memphis, Tenn., for Sgt. D.H. Kelly.

H. Wallace Maroney, Jr. (Argued), Memphis, Tenn., for Gene Barksdale.

Marty O'Shea Franklin, pro se.

Carol S. Nickle (argued), Knoxville, Tenn., for Marty O'Shea Franklin.

Before CONTIE and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

CONTIE, Circuit Judge.

The defendants, Max Aycock, et al., appeal and the plaintiff, Marty O'Shea Franklin, cross-appeals from the judgment of the district court entered in Franklin's action brought pursuant to 42 U.S.C. § 1983. Franklin, a state inmate, asserted two claims in his action. He alleged that prison officials physically beat him, violating his

Eighth Amendment rights to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. He also alleged that a prison disciplinary proceeding violated his procedural due process rights under the Fourteenth Amendment. The defendants claim the district court erred in finding for Franklin on his claim of physical abuse and in awarding monetary damages against three prison officials based on that finding. Franklin claims in his cross-appeal that the district court erred in declining to award damages on his procedural due process claim, despite having found that the procedures afforded Franklin in his disciplinary proceeding were deficient. For the reasons that follow, we affirm the district court's rulings concerning Franklin's claim of abuse, but remand Franklin's procedural due process claim for further consideration on the issue of damages.

## I.

These appeals concern two separate incidents involving Marty O'Shea Franklin. On February 12, 1982, Franklin was transferred from the Tennessee State Penitentiary in Nashville, where he was serving a sentence of thirty-three years for felony convictions, to the Shelby County Jail in Memphis. After a dispute arose concerning tuberculosis medication that Franklin had brought with him, three disciplinary write-ups were issued against Franklin. The write-ups charged Franklin with refusing a direct order, disrespect to an officer, and cursing. One of the write-ups was issued by correctional officer D.O. Walker. A disciplinary hearing on the charges commenced on March 11, 1982, before a Disciplinary Board consisting of three members: Max Aycock, D.H. Kelly, and Chaplain Lee A. Mullen. The hearing was adjourned that same day and resumed several days later. At that time, the Board found Franklin guilty of the disciplinary charges and sentenced him to thirty days in disciplinary segregation, otherwise called isolation or deadlock.

On April 11, 1982 there was a disturbance in the deadlock area where Franklin was being held. Though no fire was seen, smoke was coming from the area and the inmates were kicking and shaking their cell doors. During the disturbance, Franklin was escorted from his cell by several correctional officers to a secluded area near the jail's control center called the sally port, where Franklin claims he was beaten. Franklin subsequently was returned to his cell, after which he claims he was shackled to his bed.

On April 27, 1982, Franklin filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that his procedural due process rights were violated as a result of the disciplinary hearing. On August 30, 1982, Franklin filed a supplemental complaint under § 1983 alleging that the prison officials beat him and shackled him to his bed, thereby subjecting him to cruel and unusual punishment in violation of the Eighth Amendment and inflicting corporal punishment in violation of the Due Process Clause of the Fourteenth Amendment.

A bench trial was held before District Judge McRae on December 3–4, 1984, with Franklin appearing pro se. As to the disciplinary hearing, Franklin testified that he was never advised of the jail's rules governing disciplinary proceedings and the procedures of the Disciplinary Board. He also stated that he did not receive a copy of the write-up issued by Walker or notice of the disciplinary hearing. He further stated that he requested, but was denied, assistance in preparing and presenting his defense, although he conceded that he was permitted to present three witnesses at the disciplinary hearing. Lastly, Franklin testified that he did not receive a statement setting forth the evidence relied on by the Board or the Board's reasons for placing him in disciplinary segregation. Based on these alleged procedural infirmities, Franklin asserted he was punished, by being placed in disciplinary segregation, without due process of law.

On direct examination of Franklin, it was shown that Franklin refused to accept a

copy of the write-up issued by Walker. Also, Max Aycock, a member of the Disciplinary Board, testified that it was the jail's policy to provide all prisoners with a copy of the jail's rules and regulations. Aycock further stated that pursuant to the jail's rules a prisoner is not entitled to an attorney or assistance at a disciplinary hearing unless the prisoner is unable to read or write or unable to comprehend the disciplinary proceedings. With regard to appeals, Aycock testified that inmates customarily are issued an appeals form by the Board which the inmates can complete and submit to the chief jailer, who decides appeals from decisions of the Board.

Franklin also testified as to the events of April 11, 1982. Franklin stated that he was not among the inmates who were kicking and shaking their cell doors, but nevertheless correctional officer Allen Smith ordered him out of his cell. Smith was the supervisor on duty that day. Smith, along with correctional officers W.R. McElhaney, J.L. Taylor, Frank Hefner, Michael Watts and Wayne Gowdy, escorted Franklin to the sally port. Franklin claimed that once they were in the secluded area, Smith struck Franklin with his fist and Franklin fell to the floor. Franklin stated that he was kicked for seven or eight minutes until Taylor pulled him away from the kicking and told him to stop causing trouble. Franklin primarily accused Smith, McElhaney and Taylor of kicking him and at one point testified that he could see the feet of Smith, McElhaney, Taylor and Gowdy while he was being kicked. According to Franklin, he was then escorted back to his cell and sometime thereafter three correctional officers arrived and shackled him to his bed, stating that they were acting upon Smith's orders. Franklin testified that he was not released until the correctional officers' shift changed later in the day.

The prison officials presented a different version of the events on April 11, 1982. Smith testified that Franklin, whom Smith called a troublemaker, was shaking his cell door that day and had jammed the door with either clothing or towels. Smith expressly denied striking Franklin. Taylor described Franklin as an instigator and admitted helping escort Franklin to the sally port, but denied touching Franklin. McElhaney, who also called Franklin an instigator, testified that he and Smith found Franklin's cell door jammed with clothing and a towel. McElhaney also stated that he, Smith and other correctional officers escorted Franklin to the sally port. McElhaney denied seeing any shackles or knowing that Franklin was shackled. A correctional officer whom Franklin accused of shackling him also denied handling or seeing any shackles.

Other evidence presented at the trial included an April 11 entry from the jail's medical records stating that Franklin had "[s]ustained trauma and abrasions to back and shoulder, left ankle" and was "[s]ent to John Gaston Hospital for further exam." Also, Franklin's mother and his aunt testified that they visited Franklin on April 12, 1982, after his aunt received a telephone call stating that Franklin had been beaten at the jail. Both women stated that they observed bruises and marks on Franklin's body, including his forehead, back, shoulders and arms. They further testified that Franklin's mother contacted Internal Affairs immediately after seeing Franklin. A representative from Internal Affairs investigated the incident but testified that he was unable to prove that Franklin's injuries were inflicted by a third party. The representative did observe marks on Franklin's body.

At the close of the evidence, the district court made its ruling from the bench. With regard to Franklin's claim concerning the disciplinary hearing, the court found that the conduct of the Disciplinary Board failed to comport with the minimal due process requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In particular, the court found that the Board failed to provide Franklin with a written statement concerning the evidence relied on and the reasons for the Board's action. Without such a statement, the court observed, there was nothing to enable appellate review. The

court further held that Franklin was tendered, but refused to accept, written notice of the disciplinary charge against him. The court also found that Franklin was properly afforded the opportunity to present witnesses at the hearing and was properly denied the assistance of counsel or a counsel substitute.

Even though the court found a procedural due process violation, it declined to award any damages arising from that violation. The court ruled that it was "too speculative" to find that Franklin "would have perfected an appeal successfully or [that] the result might have been different" had the Board supplied Franklin with a written statement. The court did award a declaratory judgment, ordering the members of the Board to comply with the post-hearing, written statement requirement of *Wolff.*

With regard to Franklin's claim of abuse, the court first observed that there was a "terrible conflict in the evidence." The court proceeded to find, however, that the evidence, including the testimony of Franklin's mother and aunt, the Internal Affairs report, visual observations by other inmates, photographs and the hospital records, corroborated Franklin's claim that he received marks on his body as the result of a beating, even though "nobody saw the blows being inflicted." The court concluded, "[t]here appears to be no explanation for this man's injuries other than at the hands of the officers." The court therefore found that Franklin was removed from his cell after tampering with the locks and that Smith, Taylor and McElhaney subsequently abused Franklin in violation of his constitutional rights, even though Franklin had exaggerated the extent of his injuries resulting from the abuse. The court found there was no specific evidence to incriminate Gowdy, Hefner or Watts. Based on its findings, the court held Smith, Taylor and McElhaney jointly and severally liable for $5,000 in compensatory damages,

and held Smith individually liable for $5,000 in punitive damages, since he was the officer in charge. The court entered judgment accordingly on December 11, 1984.

The defendants timely appealed the judgment of the district court on December 28, 1984. Franklin then filed a cross-appeal, appealing the district court's denial of damages on his procedural due process claim.[1]

## II.

■ We first address the defendants'-appellants' argument that the award of damages on Franklin's claim that he was physically abused should be reversed.

The district court's finding that Franklin was beaten on April 11, 1982 constitutes a finding of fact pursuant to Fed.R.Civ.P. 52(a), which states, "[f]indings of fact ... shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A district court's finding is deemed clearly erroneous on review only if, after reviewing the entire record, the appellate court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The Supreme Court recently observed that "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The Court conceded that courts of appeals can find clear error, even in findings based on credibility determinations, in instances where documents or objective evidence contradict testimony or when a witness' story is so internally inconsistent or implausible that it would not be believed by a reason-

---

**1.** Franklin does not raise any issue regarding his claim that he was shackled to his bed in violation of his constitutional rights.

able factfinder. *Id.* 105 S.Ct. at 1512–13. The Court also stated, however, that clear error can "virtually never" be found "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence ... [and is] not internally inconsistent...." *Id.* at 1513. With regard to the burden of establishing clear error, this Circuit has stated "[i]t is the appellant who must shoulder the burden of proving such a mistake ... and this burden is not met merely by demonstrating a conflict in the testimony ... nor by seeking to redetermine the credibility of witnesses." *Sawyer v. Arum,* 690 F.2d 590, 592 (6th Cir.1982) (citations omitted).

The defendants assert that the district court's finding that Franklin was beaten is clearly erroneous. They claim that they did not cause Franklin's injuries, relying on testimony that the marks on Franklin's body could have been self-inflicted or caused by scuffling, Franklin's medical records which show that he had been treated previously for numerous abrasions, and the absence of any testimony corroborating Franklin's claims that he was struck by Smith, Taylor and McElhaney. They also note the district court's comments that there was a terrible conflict in the evidence and that Franklin exaggerated the extent of his injuries.

These arguments are insufficient to leave us with a "definite and firm conviction" that a mistake has been committed. The district court weighed the credibility of the witnesses and found Franklin's version of the incident to be more likely true. Even though there is a conflict in testimony, the burden of proving clear error is not met merely by demonstrating such a conflict or by seeking to redetermine credibility assessments. *Sawyer,* 690 F.2d at 592. Also, no evidence directly contradicts Franklin's story and his testimony is neither internally inconsistent nor implausible.

In fact, the district court correctly found that the evidence corroborated Franklin's allegations that he sustained marks on his body from the beating. Under these circumstances, there can "virtually never be clear error." *Anderson,* 105 S.Ct. at 1513. Accordingly, we hold that the district court's finding that Franklin was beaten is not clearly erroneous.

■ We further conclude that the district court correctly held that the beating violated Franklin's constitutional rights and was actionable under § 1983. "It has been widely held that the unjustified striking, beating, or infliction of bodily harm upon a prisoner by ... a correctional officer gives rise to liability under 42 U.S.C. § 1983." *King v. Blankenship,* 636 F.2d 70, 72 (4th Cir.1980). *See also, Bruce v. Wade,* 537 F.2d 850, 853 (5th Cir.1976) ("That an unjustified beating at the hands of prison officials gives rise to a section 1983 action is clear."). The beating clearly violated Franklin's substantive due process rights. Perhaps the premier decision addressing when conduct by a prison official violates an inmate's constitutional rights is *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.) (Friendly, J.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See Norris v. District of Columbia,* 737 F.2d 1148, 1150 (D.C. Cir.1984). In *Johnson,* Judge Friendly set forth the following often-cited [2] framework for analyzing whether an official's use of force violates due process or merely constitutes a tort:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. In light of the above factors, we readily conclude that the "con-

---

**2.** *See, e.g., Wilson v. Beebe,* 770 F.2d 578, 582 (6th Cir.1985) (en banc), and cases cited therein;

*Norris v. District of Columbia,* 737 F.2d at 1150 n. 3, and cases cited therein.

stitutional line has been crossed." The prison officials' conduct involved acts which "may not take [place] no matter what procedural protections accompany them." *Hudson v. Palmer*, 468 U.S. 517, 541 n. 4, 104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (1984) (separate opinion of Stevens, J.). As such, the officials' conduct violated Franklin's substantive due process rights and was actionable under § 1983. Accordingly, we affirm the award of compensatory damages entered against Smith, Taylor and McElhaney and affirm the award of punitive damages entered against Smith.[3]

### III.

Franklin argues in his cross-appeal that the district court erred in refusing to award compensatory or nominal damages for the violation by the Disciplinary Board of Franklin's procedural due process rights. Assuming that the minimal due process requirements enunciated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), applied, the district court found that the Board failed to satisfy the *Wolff* requirement of providing Franklin with a written statement setting forth the evidence relied on and the reasons for the disciplinary action. The court awarded declaratory relief for the violation, but declined to award monetary damages because it was "too speculative" to determine whether Franklin would have pursued suc-

cessfully an appeal if he had received a written statement. Franklin contends that he could have appealed successfully and concludes that his confinement in disciplinary segregation was a direct result of the procedural violation. It follows, Franklin asserts, that an award of compensatory damages for the due process violation is proper. Should this court deem compensatory damages inappropriate, however, Franklin argues in the alternative that an award of nominal damages is mandated by *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

### A.

Before addressing the issue of damages, we must find that Franklin's procedural due process rights were violated within the meaning of the Fourteenth Amendment. The first step in that inquiry is to determine whether Franklin's interest in remaining free from the restrictive confinement of disciplinary segregation is a protected life, liberty or property interest within the meaning of the Due Process Clause of the Fourteenth Amendment. *Meachum v. Fano*, 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976); *Walker v. Hughes*, 558 F.2d 1247, 1250 (6th Cir.1977).

The nature of the claimed interest here is a liberty interest in not being placed in disciplinary segregation, as opposed to re-

**3.** Having found a substantive due process violation, we need not decide whether the beating also violated the Eighth Amendment prohibition against cruel and unusual punishment. The defendants do not dispute that such a beating would violate the Eighth Amendment. However, we note that several courts have determined that an unauthorized attack by prison guards is not violative of the Eighth Amendment. *See George v. Evans*, 633 F.2d 413, 415 (5th Cir.1980) ("An isolated assault by an individual guard on an inmate is not, within the meaning of the eighth amendment, punishment."); *Johnson v. Glick*, 481 F.2d at 1032 ("[A]lthough a spontaneous attack by a guard is 'cruel' and, we hope, 'unusual,' it does not fit any ordinary concept of 'punishment.'). It appears that the preferred analysis for determining whether an attack by prison officials is actionable under § 1983 is to examine whether the attack violated the prisoner's substantive

due process rights. *See, e.g., Norris v. District of Columbia*, 737 F.2d 1148 (D.C.Cir.1984) (inmate's § 1983 claim alleging beating by prison officials stated constitutional claim under substantive due process analysis); *Freeman v. Franzen*, 695 F.2d 485 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983) (in former inmate's civil rights action alleging beating by prison officials, plaintiff could recover for substantive due process, as opposed to Eighth Amendment, violation); *Martinez v. Rosado*, 614 F.2d 829 (2d Cir.1980) (inmate's § 1983 action alleging beating by a prison guard stated a claim under substantive due process, rather than Eighth Amendment, analysis). Under these circumstances, we believe it is more appropriate to affirm solely on the Fourteenth Amendment, substantive due process, ground without rendering an opinion on whether the prison officials' conduct also violated the Eighth Amendment.

maining in the general prison population. The Due Process Clause does not, in and of itself, create a liberty interest in being confined to a general population cell. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *McCrae v. Hankins,* 720 F.2d 863, 866 (5th Cir.1983). A state may create a protected liberty interest, however, through promulgation of statutes, rules, regulations or policy statements. *See, e.g., Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871 (state-created liberty interest in not being placed in administrative segregation absent substantive predicates); *Wolff v. McDonnell,* 418 U.S. at 557, 94 S.Ct. at 2975 (state-created right to good-time credits and protected interest in not being deprived of those credits without minimum procedures); *Mayes v. Trammell,* 751 F.2d 175, 179 (6th Cir.1984) (policy statements created a liberty interest in expectation of parole release); *Bills v. Henderson,* 631 F.2d 1287, 1294 (6th Cir. 1980) (state-created liberty interest in not being transferred to administrative segregation absent specified findings); *Walker v. Hughes,* 558 F.2d at 1256 (state-created liberty interest in not having certain punishment sanctions imposed, including disciplinary segregation, absent a finding of major misconduct). In determining whether state-enacted rules create a protected liberty interest in a prison setting, a court focuses on whether the state has imposed "substantive limitations" on the discretion of prison officials, *see Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (Hawaii prison regulations, which placed no "substantive limitations" on prison officials' discretion to transfer an inmate, created no liberty interest in remaining in Hawaii prisons); *Meachum v. Fano,* 427 U.S. 215, 226–28, 96

S.Ct. 2532, 2539–40, 49 L.Ed.2d 451 (1976) (finding no state-created liberty interest in remaining in prison originally assigned to, since the state statute did not limit prison officials' discretion to transfer prisoners for any reason); or, in other words, whether the state "has used language of an unmistakably mandatory character." *Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871. This court has described aptly the inquiry in the following manner:

> Where statutes or prison policy statements have limited prison officials' discretion by imposing a specified prerequisite to the forfeiture of benefits or favorable living conditions enjoyed by a prisoner, an expectation or entitlement has been created which cannot be taken away without affording the prisoner certain due process rights. On the other hand, when prison officials have complete discretion in making a decision that will affect the inmate, no expectation or protected liberty interest has been created.

*Bills v. Henderson,* 631 F.2d at 1293.

We have no difficulty in finding that Franklin had a state-created liberty interest in remaining free from disciplinary segregation. The Tennessee Department of Corrections has promulgated Uniform Disciplinary Procedures governing disposition of disciplinary charges against state inmates [4] which limit the discretion of prison officials in determining when inmates may be placed in disciplinary segregation.[5] The language used in the procedures is mandatory, requiring that the procedures be employed and requiring a substantive predicate, proof of guilt by a preponderance of evidence of the charged disciplinary violation, before disciplinary segregation may

---

**4.** Franklin was a state prisoner who was transferred from the Tennessee State Penitentiary in Nashville to the Shelby County Jail on February 12, 1982, and was transferred back to the state penitentiary on April 15, 1982.

**5.** Among other things, the rules: provide for mandatory notice of disciplinary charges; require a hearing before the Disciplinary Board; grant inmates the right to appear at the hearing, to present evidence and to present witnesses;

state that a disciplinary charge must be proved by a preponderance of evidence; require the Disciplinary Board to render a written report setting forth its findings, the evidence relied on and the reasons for its decision; and delineate the only sanctions which the Disciplinary Board may impose. Uniform Disciplinary Procedures, § 502.01. Included among the permissible sanctions is "punitive segregation" for a period of time not exceeding thirty days.

be imposed. The state therefore has created a protected liberty interest in inmates in remaining free from disciplinary segregation absent specified, substantive predicates. Accordingly, Franklin had a protected liberty interest within the meaning of the Due Process Clause of the Fourteenth Amendment.

## B.

■ Regardless of whether Franklin had a protected liberty interest, however, the defendants asserted at oral argument that he was not "deprived" of any interest within the meaning of the Due Process Clause and therefore has not stated a cause of action cognizable under § 1983. For support of this proposition, the defendants rely on the recent Supreme Court case, *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In *Daniels,* a state inmate brought a § 1983 action to recover damages for injuries allegedly incurred when the inmate fell on a prison stairway after slipping on a pillow negligently left on the stairs by a prison correctional officer. The inmate contended that the negligence deprived him of his liberty interest in remaining free from bodily injury. The Court rejected the claim, holding that the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.* 106 S.Ct. at 663 (emphasis in original); *see also, Davidson v. Cannon,* — U.S. ——, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986) (similarly holding that neither the substantive nor procedural protections of the Due Process Clause were triggered in a § 1983 action brought by a state inmate claiming that prison officials violated his constitutional rights by negligently failing to protect him from another inmate). This holding overruled *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), "to the extent that it states that mere lack of due care by a state official

may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Daniels,* 106 S.Ct. at 665.

In reaching its conclusion, the Court did not dispute that a protected liberty interest was involved (i.e., that the asserted interest in freedom from injury was encompassed within the Fourteenth Amendment's protection of life, liberty and property); rather, the Court focused on whether a merely negligent infringement of that interest could constitute a "deprivation" actionable under § 1983.[6] *See Davidson,* 106 S.Ct. at 670 ("the Fourteenth Amendment does not require a remedy when there has been no 'deprivation' of a protected interest"). The Court observed that historically, due process protections only have been afforded with regard to *"deliberate* decisions of government officials." *Daniels,* 106 S.Ct. at 665 (emphasis in original). The Court concluded that negligent conduct which causes injury to a protected interest could not be considered a "deprivation" within the meaning of the Fourteenth Amendment, stating that a contrary holding "would trivialize the centuries-old principle of due process of law." *Id.*

Applying *Daniels* to the present case, the defendants argue that the Disciplinary Board's failure to render a written statement was merely negligent conduct. As such, the defendants claim, the conduct did not constitute a "deprivation" of Franklin's liberty interest within the meaning of the Fourteenth Amendment. The defendants conclude that Franklin therefore has not alleged a procedural due process violation cognizable under § 1983 and request that his action be dismissed.

We disagree with the defendants' interpretation and application of *Daniels.* Whether or not the Board negligently failed to render a written statement, *Daniels* does not apply to preclude Franklin's procedural due process claim. In light of *Daniels,* three inquiries must be made to

---

**6.** The two essential elements to a § 1983 claim are: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

determine whether, in a § 1983 action, a procedural due process violation has been established. They are: (1) whether the claimant has established a life, liberty or property interest protected by the Due Process Clause; (2) whether that interest was "deprived" within the meaning of the Due Process Clause; and (3) whether adequate procedures were afforded prior to the deprivation of the protected interest. *Daniels* relates exclusively to the second inquiry. Under *Daniels*, the focus in determining whether a protected interest is "deprived" is on the conduct which has allegedly injured the life, liberty or property interest, and on whether that conduct was negligent or involved some greater mental state, e.g., recklessness or deliberateness. The conduct which allegedly injured Franklin's liberty interest, and which is therefore the focus of our *Daniels* inquiry, is the Disciplinary Board's decision to place him in disciplinary segregation, rather than the Board's alleged failure to afford adequate procedures by not rendering a post-hearing written statement. Accordingly, we examine the decision of the Board to determine whether it was deliberate and intentional or merely negligent.

The support for this approach is found in *Daniels* itself. There, the plaintiff argued that at least some § 1983 due process claims based on negligent conduct are permitted and "cite[d] as an example the failure of a State to comply with the procedural requirements of *Wolff v. McDonnell,* [418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] before depriving an inmate of good-time credit." *Daniels,* 106 S.Ct. at 666. The Court rejected the plaintiff's argument and characterization of *Wolff,* describing *Wolff* in the following manner:

> We think the relevant action of the prison officials in that [*Wolff*] situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord

him the procedural protections of the Due Process Clause.
*Id.*

From this statement it is clear that the "relevant action" in the present case is the Disciplinary Board's "deliberate decision" to place Franklin in disciplinary segregation. Thus, the Board's deliberate decision constituted an intentional deprivation of Franklin's protected liberty interest, regardless of whether the Board negligently failed to render a written statement. The Due Process Clause is implicated by such deliberate, intentional conduct. Accordingly, we find that Franklin was deprived of a protected liberty interest within the meaning of the Fourteenth Amendment and therefore hold that Franklin's due process claim is actionable under § 1983.[7]

### C.

Thus far, we have found that Franklin had a protected liberty interest and that he was deprived of that interest in a manner actionable under § 1983.

We now turn to the final inquiry in our procedural due process analysis, "whether the process afforded [Franklin] satisfied the minimum requirements of the Due Process Clause." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *see also, Wolff v. McDonnell,* 418 U.S. 539, 558–72, 94 S.Ct. 2963, 2975–82, 41 L.Ed.2d 935 (1974). The Supreme Court in *Wolff v. McDonnell* set forth the minimum procedures which must be followed in prison disciplinary hearings resulting in disciplinary confinement, as well as loss of good-time credit. *Wolff,* 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19. *Wolff* requires that inmates facing disciplinary charges: (1) be given written notice of the charges at least 24 hours in advance of a disciplinary hearing; (2) be permitted to present witnesses and evidence at the hearing, so long as doing so would not jeopardize institutional safety or correctional goals; and (3) be provided with a written statement setting forth the evidence relied on by the

---

7. There is no dispute that the other essential element of a § 1983 action, action taken under color of state law, is present in this case. *See Parratt,* 451 U.S. at 535, 101 S.Ct. at 1912.

tribunal and the reasons for the disciplinary action taken. *Id.* at 563–67, 94 S.Ct. at 2978–80. *Wolff* also held that an inmate has no right to counsel in disciplinary proceedings, but should be afforded the aid of a staff member or fellow inmate under special circumstances, such as when the inmate is illiterate or when the issues are complex. *Id.* at 569–70, 94 S.Ct. at 2981.

The district court in the present case found that the Disciplinary Board's failure to provide Franklin with a post-hearing written statement violated his procedural due process rights.[8] This finding is correct. A written statement describing the evidence relied on by the Board and the Board's reasons for placing Franklin in disciplinary segregation was clearly required by *Wolff.* We therefore conclude that Franklin was not afforded procedural due process before he was deprived of his protected liberty interest. Consequently, we find that Franklin's procedural due process rights were violated within the meaning of the Fourteenth Amendment.

### D.

Having found a due process violation, we now examine whether Franklin is entitled to damages for that violation.

In *Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978), the Supreme Court held that compensatory damages for a procedural due process violation may not be awarded absent proof of actual injury. The Court further held, however, that even in the absence of such proof, "the denial of procedural due process should be actionable for nominal damages...." *Id.* at 266, 98 S.Ct. at 1053. The issue of whether compensatory damages should be awarded can be separated into two separate inquiries. The first inquiry concerns causation; whether the action taken without due process is justified or, in other words, whether the same action would have been taken even if due process had been afforded. *Carey,* 435 U.S. at 260, 98 S.Ct. at 1050. In this case, the inquiry is whether Franklin would have been placed in disciplinary segregation even if he had received the required written statement from the Disciplinary Board. The second inquiry is whether there is proof of actual injury, such as emotional or mental distress caused by the denial of due process, to support an award of compensatory damages. *Id.* at 263–64, 98 S.Ct. at 1052.

The district court below did not reach the second inquiry, concluding that it was "too speculative" to determine whether Franklin would have successfully appealed the Disciplinary Board's decision, and consequently would have remained free from disciplinary segregation, had he received the required written statement. It is apparent that the court believed that Franklin bore the burden of proving that the procedural default "caused" his injury. The court, unconvinced that there would have been a different result if Franklin had been afforded due process, held that Franklin could not recover compensatory damages for the procedural due process violation.

We find it necessary to remand on this issue of compensatory damages because the district court improperly allocated the burden of proving causation. This Circuit has held in a nearly identical setting that once it is determined that a claimant's due process rights were violated, "the burden of proof shift[s] to the [defendants] to demonstrate that the procedural violation did not cause [the plaintiff's] injury." *King v. Wells,* 760 F.2d 89, 94 n. 4 (6th Cir.1985). In *King,* a state inmate brought a § 1983 action alleging that inadequate procedures

---

**8.** Franklin also had alleged, and presently argues, that the Disciplinary Board committed other procedural due process violations, e.g., failure to provide advance written notice of the disciplinary charges and refusal to provide a counsel substitute, which contributed to his placement in disciplinary segregation and therefore support an award of monetary damages. We reject those contentions, finding that the district court correctly determined that Franklin was tendered, but refused to accept, written notice of the disciplinary charges and that Franklin did not have to be afforded a counsel substitute under the circumstances. *See Wolff,* 418 U.S. at 569–70, 94 S.Ct. at 2981 (no right to retained or appointed counsel, limited right to counsel substitute where inmate is illiterate or issues are complex).

were used in a disciplinary hearing. The procedures were found to be defective, the prison officials having failed to meet the *Wolff* requirement of providing a written statement of the evidence relied on and the reasons for the action taken. *Id.* at 93. The inmate claimed, as Franklin now claims, that the procedural violation resulted in his confinement in disciplinary segregation. The district court made a factual finding, however, that the inmate would have been found guilty of the disciplinary charge and confined in disciplinary segregation even if he had been afforded due process. *Id.* at 94. In making that determination, the court noted that the burden of proving that the procedural violation did not cause the inmate to be placed in disciplinary segregation was on the prison officials. We expressly approved this allocation of the burden of proof. *Id.* at 94 n. 4.

The Supreme Court has also implicitly approved this allocation of the burden of disproving causation. In *Carey v. Piphus*, the court of appeals had held that if the defendants could prove on remand that the same action, suspension of students, would have been taken even if the plaintiffs had been afforded due process, the plaintiffs would not be entitled to recover damages for injuries caused by the action. *Carey*, 435 U.S. at 260, 98 S.Ct. at 1050. The Supreme Court stated "[w]e do not understand the parties to disagree with this conclusion. Nor do we." *Id.* (footnote omitted).

Thus, on remand the prison officials will bear the burden of proving that the same result would have occurred even if there had been no due process violation. This essentially is the burden of proving that the due process violation did not cause Franklin's injury. In order to meet this burden, the prison officials must establish that Franklin would not have appealed successfully from the Board's decision even if he had received the post-hearing statement required by *Wolff.* The officials can accomplish this, for example, by showing that disciplinary segregation was justified under the circumstances. If the district court determines that the officials have shown by a preponderance of the evidence that the result would have been the same if there had been no due process violation, then the court will hold that Franklin is not entitled to compensatory damages. If, however, the court determines that the officials have not shown that the same result would have occurred, the court then will examine whether Franklin has sustained his burden under *Carey* of proving actual injury and damages in a manner sufficient to support an award of compensatory damages. If Franklin is able to show actual, uncompensated injury, he will be entitled to compensatory damages; if not, the court should deny compensatory damages.

However, even if the district court finds that the same result would have occurred, or finds that Franklin has not shown actual injury and damages, Franklin will be entitled to recover nominal damages of not more than one dollar. This conclusion is mandated by the Supreme Court's disposition of the case in *Carey* and its holding that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266, 267, 98 S.Ct. at 1053, 1054 (footnote omitted). There is no question that Franklin's procedural due process rights were violated. This fact, in and of itself, provides Franklin with the right to receive nominal damages. It does not matter that Franklin also sought, and received, declaratory relief. *See Bilbrey v. Brown*, 738 F.2d 1462 (9th Cir.1984) (reversing the district court's judgment in § 1983 action seeking declaratory relief and damages for violation of Fourth Amendment rights; awarding declaratory relief and granting new trial with regard to determining whether entitled to substantive or only nominal damages); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980) (reversing the district court's judgment in § 1983 action seeking declaratory relief and damages for violation of First Amendment rights; granting both declaratory relief and nominal damages); *cf., Segarra v. McDade*, 706 F.2d 1301 (4th Cir.1983) (reversing the district court's award of nom-

inal damages and attorney fees in § 1983 action in which a state inmate *exclusively* sought declaratory relief for alleged violations of his procedural due process rights in a disciplinary proceeding). Franklin specifically requested nominal damages and the Supreme Court has declared that at least nominal damages will be awarded, if sought, for a denial of procedural due process. Consequently, if the district court determines on remand that compensatory damages are unjustified, it nevertheless will award nominal damages not to exceed one dollar.

Accordingly, for the reasons set forth above, the district court's holding regarding Franklin's claim of physical abuse, which is the subject of the defendants' appeal, is AFFIRMED. The district court's holding concerning Franklin's procedural due process claim, insofar as it held that Franklin's procedural due process rights were violated, is also AFFIRMED. The district court's denial of damages for the procedural due process violation, which is the subject of Franklin's cross-appeal, is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.