# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

**February 10, 1999**

**Cecil Crowson, Jr.
Appellate Court
Clerk**

FRED WORTH,                               )
                                             )
       Plaintiff/Appellant,              )     Cumberland Circuit No. CV002431
                                             )
**v.**                                    )
                                           )     Appeal No. 03A01-9709-CV-00442
**CUMBERLAND MOUNTAIN**                    )
**PROPERTY OWNERS ASSOCIATION,**           )
**INC.**                                   )
                                           )
       Defendant/Appellee.              )
                                           )

## APPEAL FROM THE CIRCUIT COURT OF CUMBERLAND COUNTY
## AT CROSSVILLE, TENNESSEE

### THE HONORABLE JOHN J. MADDUX, JR., JUDGE

For the Plaintiff/Appellant:           For the Defendant/Appellee:

Michael A. Wagner                  Sharon Potter Serra
Chattanooga, Tennessee            Crossville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a replevin action. The plaintiff employee asserts he is the proper owner of two lawn mower tractors purchased on his personal account pursuant to an oral agreement in which the defendant employer agreed to make payments on the mowers in exchange for their use. The trial court found that the defendant employer was entitled to possession of the equipment and awarded the employer total damages of $608. The plaintiff employee appeals, and we affirm.

In June 1990, Plaintiff/Appellant Fred Worth ("Worth") began working as the resident manager of the Defendant/Appellee Cumberland Mountain Retreat Property Owners' Association ("Retreat"). His duties included maintaining and mowing the grounds of the Retreat property, maintaining the water system, and handling the business of the association, including purchasing necessary equipment. Worth lived on property adjacent to the Retreat property.

During his employment, Worth purchased mowing equipment, including two Kubota mowers, a 2400 model and a 2000 model. Worth purchased the Kubota 2400 mower on May 5, 1993. At trial, Worth testified that he traded in three mowing decks that belonged to the Retreat for a $2000 credit against the Kubota 2400 mower purchase price. Worth also traded a satellite dish system belonging to him in return for a $1,000 credit on the cost of the Kubota 2400. Worth asserted that he paid the $6,000 balance on the Kubota 2400 with a personal check on May 7, 1993. On the same day, Worth also purchased the Kubota 2000 mower and a new mowing deck. He claimed that he traded in a Sears Craftsman mower for a $2,000 credit against the total purchase price of the Kubota 2000 mower. The dealership agreed to defer the $1,000 down payment on the Kubota 2000 for 90 days, and the remainder of the purchase price was financed. Both mowers were purchased and the 2000 model mower was financed on Worth's personal account.

Worth used the mowers on the Retreat property and on his own property adjacent to the retreat. Worth left his employment with the Retreat in September 1994. After the Retreat was notified that the 2000 model mower would be repossessed through foreclosure, it made the annual installment payments of $2540 in 1995 and 1996.

In 1996, Worth filed suit under Tennessee Code Annotated §§ 29-30-101 to -111 seeking replevin of the mowers and other personal property in the control of the Retreat. *See* Tenn. Code Ann. §§ 29-30-101 to -111 (1980).[1] The original replevin warrant listed ninety-seven items. By

---

[1] The purpose of this statute is to determine who has the right of possessing certain personal property. *See Rags, Inc. v. Thoroughbred Motor Cars, Inc*., 769 S.W.2d 493, 495

trial, however, the 2000 model mower was the only disputed item at issue from the original list. At trial, the parties agreed to also litigate an additional mower, the 2400 model mower. Robert J. Myers ("Myers"), who testified for the Retreat, and Worth were the only witnesses at trial. In his suit, Worth claimed that the mowers were purchased pursuant to an oral agreement whereby Worth purchased the mowers on his personal account and the Retreat agreed to make the payments on the 2000 model mower in exchange for the use of both mowers in the upkeep of the Retreat property.

The Retreat asserted that no such contract existed. It maintained that both mowers were purchased with Retreat funds, and were therefore the property of the Retreat. The Retreat argued that the $6000 personal check Worth used in the purchase of the 2400 model mower consisted of funds he misappropriated from the Retreat. The Retreat contended that Worth had no authority to trade in Retreat assets for partial payment on the mowers. The Retreat presented evidence at trial indicating that at the time the mowers were purchased, it did not know that its assets and allegedly misappropriated funds were improperly used by Worth, and therefore believed the mowers belonged to him. When these facts were discovered after Worth's employment ended, the Retreat concluded that they owned the mowers. At the time of trial, the Retreat had a lawsuit pending against Worth for the allegedly misappropriated funds.

Conflicting evidence was presented at trial concerning the ownership of the Sears Craftsman mower traded in on the purchase of the 2000 model mower. Worth claimed he received a Sears Craftsman mower by deed when he purchased his property adjacent to the Retreat, but provided no documentation to support his claim. The Retreat also claimed ownership of a Sears Craftsman mower and produced an inventory from 1992 which included a mower of this type. This mower was not listed on subsequent Retreat inventories. Worth testified that the Retreat's Craftsman mower was traded in on a prior purchase for other equipment, but Worth could produce no documentation to support his contention.

_____

(Tenn. App. 1988).

After the bench trial, the trial court made the following findings of fact:

(1) It is the opinion of the Court that the Plaintiff has not shown any ownership interest in the subject personal property, with the exception of a satellite dish, valued at $1,000.00; and

(2) The Plaintiff left his employment with the Defendant in September 1994, but did not file this possessory action until April 1996; and

(3) There was no credible proof that the Plaintiff owned a Sears 18 HP riding lawn mower, but there was proof that the Defendant owned a Sears 18 HP riding lawn mower; and

(4) It is the opinion of the Court that both Kubota lawn tractors belong to the Defendant; and

(5) The Court finds that Robert Myers was and is a very credible witness, and the Court was not persuaded by the testimony of Fred Worth; and

(6) The Plaintiff failed to carry his burden of proof in this cause.

The trial court then found that the Retreat was entitled to possession of the two Kubota lawn mowers at issue in this case. Pursuant to Tennessee Code Annotated § 29-30-110,[2] the trial court awarded damages of $1,608 to the Retreat for attorney's fees and cost of storing and transporting one of the mowers at issue in the case. The trial court awarded Worth an offset of $1,000, representing the trade-in value of his satellite dish, resulting in a total award of damages to the Retreat in the amount of $608, with costs divided between the parties. Worth appealed to this court.

On appeal, Worth argues six points of error. He first contends that the trial court erred in failing to consider his $6000 check to the lawn equipment company on the purchase of the 2400 model mower. Next he contends that three of the trial court's findings are not supported by the preponderance of the evidence, namely (1) that Worth did not trade in his Sears Craftsman mower for the purchase of the 2000 model mower, (2) that there was no agreement between Worth and the Retreat concerning the payment and use of the mowers, and (3) that the mowers belonged to the Retreat. Worth also asserts that the trial court erred in considering exhibits numbered six and eight, pertaining to monies paid to Worth for contract services, because they were irrelevant. Finally,

---

[2] Tennessee Code Annotated § 29-30-110 provides as follows:

The court may, in proper cases, give exemplary damages, including reasonable attorneys fees, in favor of the defendant for the plaintiff's wrongful suing out of this possessory action or in the event that the plaintiff fails to prosecute the action after it has been instituted.

Tenn. Code Ann. § 29-30-110 (1980).

3

Worth argues that the trial court erred in awarding attorney's fees to the Retreat because ninety-six of the ninety-seven items originally listed in the replevin warrant were returned to Worth.

"Because this case was tried without a jury, our review of the issues of fact is *de novo* on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise." ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***see also*** Tenn. R. App. P. 13(d).

Worth first argues on appeal that the trial court gave inadequate consideration to Worth's personal check for $6000 used to pay off the 2400 model mower. He claims that this check proves his ownership of the mower. The Retreat responds by noting that the trial court stated, "I've already looked at all the exhibits," and argues that this shows that the trial court considered the $6000 check. Worth presented no evidence indicating that the trial court failed to consider all of the evidence presented at trial. Indeed, the record affirmatively indicates that all of the evidence was considered. This issue is without merit.

Three of Worth's issues address the preponderance of the evidence in this case and question the trial court's findings of fact. On these issues, Worth has the burden of establishing that the evidence preponderates against the trial court's factual findings. ***See Lowe v. Caledonian-American Ins. Co.***, 324 S.W.2d 420, 420 (Tenn. App. 1959).

Worth argues that the trial court erred in its finding that he failed to prove ownership of the Sears Craftsman mower that was traded in for the 2000 model mower. Both parties testified to ownership of a Sears Craftsman mower. Worth claimed that he received a mower of this type when he purchased his property adjacent to the Retreat. He provided no documentation to support this assertion. The Retreat's equipment inventory list for 1992 also listed a mower of this type. No such mower was listed on subsequent inventories. Worth testified that the Retreat's Sears Craftsman mower was traded in early 1992 for other lawn equipment. However, Myers testified that he reviewed records at the lawn equipment store pertaining to Retreat transactions over the past several years. Meyers found records going back as far as 1991, but found no record of the trade or purchase claimed by Worth. Worth argues that he was the only witness who had first hand knowledge as to which Sears Craftsman mower was traded in, while Myers, the Retreat's witness, said that his only knowledge about the transaction stemmed from documents he reviewed.

The trial court found that Worth's testimony was not persuasive, but found that Myers was

4

a very credible witness. "Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses." *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996) (citations omitted)). "[F]indings that are related to the issue of credibility will not be disturbed by this court, absent other concrete evidence to the contrary which shows that the trial judge erred in his judgment of the veracity of the witnesses." *Farmers & Merchants Bank v. Dyersburg Prod. Credit Ass'n*, 728 S.W.2d 10, 18 (Tenn. App. 1986). The Retreat's assertion that its Sears Craftsman mower was the one traded in for the 2000 model mower is consistent with the proof at trial; it is not so internally inconsistent or implausible that it could not be believed by a reasonable fact finder. *See Franklin v. Aycock*, 795 F.2d 1253, 1257-58 (6th Cir. 1986). The Retreat provided some documentation that it owned such a mower before the two Kubota mowers were purchased, while Worth provided no documentary proof of his ownership. Moreover, Worth failed to produce any documents or objective evidence that contradicted the trial court's finding. Based on the record as a whole, and taking into account the trial court's credibility determinations, we cannot conclude that the evidence preponderates against the trial court's finding of fact. The decision of the trial court on this issue is affirmed.

Worth also disputes the trial court's implicit finding that there was no oral agreement between the parties that the Retreat would make payments on the 2000 model mower in exchange for its use of both mowers. Worth asserted that such an oral agreement existed, while Myers testified that he was not aware of any such agreement. The minutes from the Retreat's board meetings reflected no such agreement. Myers testified that until the Retreat discovered that its assets, along with allegedly misappropriated funds, were used to purchase the mowers, the Retreat believed that the mowers belonged to Worth. After this discovery, the Retreat decided to make annual payments of $2540 on the 2000 model mower in order to protect its interest from foreclosure. Myers stated that he understood that Worth purchased the mower on a lease purchase agreement and that two payments were necessary to keep the mower from foreclosure. The checks for these payments were written in April, 1995 and April, 1996. The April, 1995 check from the Retreat indicated it was for "Lease Payment for Mower." Worth argued that this was evidence of the agreement between the parties. Myers testified, however, that he mistakenly made out the April, 1995 check to the lawn

equipment company rather than to the financing company. The employee of the lawn equipment company then told him to write on the check that it was for the lease payment. Therefore, Myers indicated that the reference on the check to a lease concerned the financing agreement between Worth and the seller rather than an agreement between the Retreat and Worth. As noted above, the trial court heard the conflicting testimony of the witnesses and found Myers was very credible and found Worth's testimony unpersuasive. Considering the record as a whole and taking into account the trial court's determinations regarding credibility, we cannot find that the evidence preponderates against the trial court's finding of fact on this issue. The decision of the trial court on this issue is affirmed.

Worth argues on appeal that the evidence preponderates against the trial court's conclusion that the Retreat was entitled to possession of the two mowers. As noted above, the evidence at trial, including the trial court's determination regarding credibility, support the trial court's findings that the Retreat's Sears Craftsman mower was traded in for the model 2000 mower and the implicit finding that there was no agreement between the parties that the Retreat would make payments on the model 2000 mower in exchange for its use. These factual findings, and the record as a whole, support the trial court's conclusion that the Retreat was entitled to possession of both mowers. The decision of the trial court on this issue is affirmed.

Worth also argues that the trial court should not have admitted exhibits numbered six and eight into evidence because the evidence was irrelevant. "A trial court is given considerable latitude in the admission of evidence and will be reversed only for an abuse of discretion." *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. App. 1996) (citing *Steele v. Ft. Sanders Anesthesia Group, P.C.*, 897 S.W.2d 270, 275 (Tenn. App. 1994)). The Retreat maintains that Worth never properly objected to the introduction of this evidence. The record on Worth's objection is somewhat unclear. However, Worth does not explain on appeal how he was prejudiced by the admission of these exhibits into evidence. Based on all of these considerations, we find no abuse of discretion by the trial court in admitting these exhibits into evidence. The decision of the trial court on this issue is affirmed.

Finally, Worth argues that the trial court erred in assessing attorney's fees against him when the trial court assessed costs equally between the parties. In this case, Worth sought a specific statutory remedy which provides that attorney's fees may be awarded to the defendant if the court

6

finds that the plaintiff wrongfully filed the possessory action. "The court may, in proper cases, give exemplary damages, including reasonable attorneys fees, in favor of the defendant for the plaintiff's wrongful suing out of this possessory action . . . ." Tenn. Code Ann. § 29-30-110 (1980). Where attorney's fees are provided by statute, "a trial court has wide discretion in its decision to award attorneys fees." *K-Testing Lab, Inc. v. Estate of Kennon*, No. 02A01-9703-CH-00064, 1998 WL 373414, at *2 (Tenn. App. July 7, 1998). As stated above, the trial court "was not persuaded by the testimony of Fred Worth." The trial court based the attorney's fees award on this finding. The trial court is given discretion in awarding attomey's fees under the statutory remedy in this case. Our review of the record indicates no abuse of discretion on the part of the trial court in assessing attorney fees to Worth.

In sum, we find that the trial court gave adequate consideration to Worth's evidence reflecting his $6000 payment on the 2400 model mower. After reviewing the record, we do not find that the evidence preponderates against the trial court's factual findings that Worth did not trade in his Sears Craftsman mower for the 2000 model mower, that there was no oral agreement between the parties regarding the use of the mowers, and that the Retreat was entitled to the possession of both mowers. The trial court did not abuse its discretion in admitting the contested exhibits at trial. Lastly, we find that the trial court properly awarded attorney's fees.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, for which execution may issue, if necessary.


_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**

7