**Gregory HOWARD, Plaintiff–Appellant,**

v.

**Herbert GRINAGE, et al., Defendants–Appellees.**

No. 94–2234.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 23, 1996.

Decided May 3, 1996.

Michael J. Steinberg, Daniel E. Manville (argued and briefed), Ann Arbor, MI, for plaintiff-appellant.

E. Michael Stafford, Asst. Atty. Gen. (argued and briefed), Corrections Div., Keith D. Roberts, Asst. Atty. Gen., Lansing, MI, for defendants-appellees.

Before: MARTIN and RYAN, Circuit Judges; KATZ, District Judge.*

RYAN, Circuit Judge.

Plaintiff, Gregory Howard, an inmate at the State Prison of Southern Michigan (SPSM), originally brought this procedural due process case under 42 U.S.C. § 1983 alleging a deprivation of a liberty interest for being confined to protective segregation and to increased security confinement without administrative hearings or review. In *Howard v. Grinage,* 6 F.3d 410 (6th Cir.1993) (*Howard I*), this court found that plaintiff had asserted a constitutionally protected liberty interest and remanded the case to the district court for a determination of whether defendants' conduct rose to the level of gross negligence or deliberate indifference sufficient to support an award of damages under section 1983.

On remand, the district court entered judgment in favor of defendants finding no constitutional violation of plaintiff's protected liberty interest. Howard now appeals from this decision. We hold that the district court applied an incorrect legal standard to resolve the question of liability and we therefore REVERSE its judgment and REMAND with instructions that the appropriate legal standard be applied.

## I.

### A.

This case has a long procedural history and is on appeal before this court for the third time. *See Howard I; and Perry v. Foltz,* No. 88–1367, 1988 WL 113994, at *1 (6th Cir. Oct. 24, 1988) (unpublished disposition). Howard originally brought a 42 U.S.C. § 1983 suit against prison officers claiming that confining him in protective custody *and* increasing the security level from close to a maximum custody classification without a hearing, notice, or a waiver, deprived him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. In the original case, the district court granted summary judgment in favor of the prison officials, finding no deprivation of plaintiff's liberty interest. On appeal, this court reversed in part and remanded the case to the lower court for further proceedings because it found that a genuine issue of material fact remained as to whether Howard was in fact deprived of a constitutionally protected liberty interest, making summary judgment improper. *Perry,* 1988 WL 113994, at *1.

On remand, the district court entered summary judgment in favor of defendants once again, concluding that plaintiff Howard had not been deprived of his due process rights and was therefore not entitled to damages. *Howard I,* 6 F.3d at 411. On appeal, this court reversed the judgment and remanded the case for further proceedings, finding that the lower court's findings of facts were clearly erroneous. *Id.* at 413–14. This court concluded that Howard had asserted a constitutionally protected liberty interest and directed the district court to determine "whether defendants' conduct rose to the level of gross negligence or deliberate indifference that would be required to support an award of damages under § 1983." *Id.* at 415.

### B.

The facts underlying the two former appeals have been extensively set forth in *Howard I* and need not be repeated here. The question on appeal in *Howard I* was whether Howard had a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Applying procedural due pro-

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

cess analysis, this court concluded that the Michigan Prison regulations and policy directives at issue in that case created a liberty interest which was protected by the Due Process Clause. *Id.* at 412. We held that "[c]ontinued confinement in protective custody after the reasons for such segregation no longer exist could constitute a violation of plaintiff's liberty interest. . . ." *Id.* Similarly, we found that the regulation addressing security level classifications likewise created a protected liberty interest, which in the absence of notice or a hearing "could under certain circumstances constitute a violation of plaintiff's liberty interests." *Id.* at 413.

On the transfer claim, this court reversed the judgment of the lower court, which had concluded that Howard had suffered no deprivation of his liberty interest when he was transferred from the Riverside Correctional Facility (RCF) to the Huron Valley Men's Facility (HVMF). This court concluded that the lower court's findings of fact were clearly erroneous because, contrary to the district court's findings, the record clearly indicated that Howard's transfer was in violation of Michigan Department of Corrections (MDOC) regulations. *Id.* at 414.

The district court framed the issue to be decided on remand as follows:

On remand the Court's obligation is to decide whether the following conduct was grossly negligent or deliberately indifferent to plaintiff's rights, or simply negligent:

(1) the conduct of defendant James Stegal (Stegal), Assistant Deputy Warden for Housing at [ (RCF) ], in ordering a transfer of plaintiff to [ (HVMF) ] without a hearing;

(2) the conduct of defendant Kenny Robinson (Robinson), Assistant Deputy Warden at HVMF, in maintaining plaintiff in Protective Custody for 27 days without a hearing;

(3) the conduct of defendant Herbert Grinage (Grinage), Assistant Deputy Warden at [ (SPSM) ], in maintaining plaintiff in Protective Custody instead of the General Population for 559 days.

To answer these questions, the court held an evidentiary hearing at which three witnesses testified. The court also took into consideration transcripts of previous proceedings.

Former defendant Dan Bolden testified that he instructed Stegal to transfer Howard from RCF to HVMF. This was a mistake, however, because Bolden intended to say SPSM rather than HVMF. Although Stegal knew that administrative policies and rules required notice and a hearing before an inmate is transferred from a close security facility to a maximum security facility, he failed to inform Bolden that the transfer would be in violation of prison rules. He also failed to hold a hearing and to notify Howard. The only explanation Stegal gave for his failure to comply with prison rules, even though he knew at the time that the transfer and the increase in security confinement violated prison rules, was that he "wasn't thinking at the time. . . . That's all I can say." On the basis of this testimony, the district court concluded that Stegal was not liable for violating Howard's liberty interest because Stegal had expressed no "animus" toward Howard, nor did he have an "ulterior motive" or "unspoken reason" for not ordering a hearing.

Although defendant Robinson failed to appear at the evidentiary hearing pursuant to a subpoena, the district court considered the testimony Robinson had given at the trial. The court acknowledged that this court had determined on appeal in *Howard I* that the record was replete with evidence of Howard complaining to Robinson about being at HVMF and in protective custody. The court also found that Robinson had given no explanation for not ordering a hearing for Howard. Indeed, the trial transcript reveals that Robinson was aware of the prison rules with respect to transfers and increased security confinements, and that Howard had complained to him that his transfer was "illegal."

Robinson's duties were to interview incoming inmates, and to review their files when the inmates complained that their transfer or custody placement was contrary to prison regulations. Although Robinson acknowledged that Howard's file indicated that he was to be housed in the general prison popu-

lation rather than in protective custody, Robinson made the decision to put Howard in protective custody based on the assumption that a previous enemy of Howard's was still housed at HVMF. However, Robinson failed to give Howard notice or to hold a hearing regarding this decision.

According to Bolden, administrative policies also dictate that upon Howard's transfer, Robinson should have determined that the transfer and increased security confinement were in violation of prison rules; that Howard had not received notice and a hearing; and that a hearing should have been ordered. Robinson offered no explanation for his failure to hold a hearing or to have Howard sign a waiver. Another prison official who was aware that Howard was being held in violation of prison regulations notified Bolden of this fact, and Bolden immediately ordered that Howard be transferred out of HVMF.

On the basis of this testimony, the district court found that Robinson was not liable for violating Howard's protected liberty interest because Robinson had expressed no "animus" toward Howard, nor did he have any "ulterior motive" or "unspoken reason for not ordering a hearing or for keeping plaintiff in Protective Custody."

. Defendant Grinage also testified at the district court hearing. He was the assistant deputy warden at SPSM when Howard was transferred from HVMF to SPSM, and he was also a standing member of the Security Classification Committee (SCC) with responsibility for examining the bimonthly review reports of prisoners held in protective custody.· Immediately upon arriving at SPSM, Howard began to voice his desire to be reassigned to the general population, and he did so repeatedly. *Howard I,* 6 F.3d at 414. These requests for transfer were noted in Howard's bimonthly reports, which Grinage signed. *Id.* at 412. Four months after Howard first asked to be reassigned, Grinage, as a standing member of the SCC, signed a ·report recommending that Howard be reassigned to the general population, but no action was taken on this recommendation. *Id.* at 414.

Howard continued in protective segregation, during which time he continually asked to be reassigned, but no action was taken. *Id.* Grinage signed a number of subsequent reports and he acknowledged that he had been put on notice of Howard's continued segregation. The district court found that Grinage had offered no explanation for keeping Howard in protective segregation for fourteen months without notice or a hearing.

Bolden testified that the failure to release plaintiff into the general population was a "break down" in the process because the rules explicitly state that once an inmate asks to be released, and that release is approved, he cannot be kept in segregation without notice and a hearing. However, Howard remained in protective segregation his entire stay at SPSM, until he was transferred out in March 1988—559 days.

The district court concluded that Grinage was not liable to Howard for violating his protected liberty interest because he had no "animus" toward Howard, nor did he have any "ulterior motive or unspoken reason" for not releasing plaintiff to the general population. The court found this conclusion to be supported by the fact that Grinage is responsible for reviewing some 700 reports every two weeks, and that Howard never communicated his desire to be moved to Grinage "directly" or "face-to-face."

In reaching its conclusion that none of the defendants' conduct rose above the level of "negligence," the court relied on several substantive due process cases and failed to take into consideration any of the procedural due process cases plaintiff brought to its attention. Quoting a substantive due process case, the court stated that "[g]ross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" (Quoting *Lewellen v. Metropolitan Gov't of Nashville and Davidson County,* 34 F.3d 345, 351 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995).) From this decision plaintiff now appeals.

## II.

### A.

■ This court reviews *de novo* the application of legal principles to factual determi-

nations because the decision involves a legal conclusion. *Taylor and Gaskin, Inc. v. Chris–Craft Indus.*, 732 F.2d 1273, 1277 (6th Cir.1984). That is, mixed questions of fact and law are reviewed *de novo*. *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir.1992).

## B.

■ Plaintiff challenges the district court's decision to apply a standard rooted in substantive due process analysis, rather than one based on procedural due process doctrine. We conclude that the district court created an unsupported and unduly restrictive standard, one permitted by neither substantive nor procedural due process principles. We also conclude that the lower court erred in applying this standard to an irrelevant aspect of the issue, the decision to deny due process, rather than to the decision to place Howard in protective segregation and increased security confinement. By relying on substantive due process cases, the district court appears not to have appreciated some of the critical distinctions between procedural due process and substantive due process. To assist the district court upon remand for the third time, we begin with a discussion of this distinction, as it is relevant to this case.

## C.

■ The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1. The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. Although the distinctions between the two are often difficult to discern, and indeed often appear to converge, the doctrinal foundation upon which these limitations were erected helps to explain the different standards applicable to each and to sharpen the focus of analysis.

■ A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983), *aff'd*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Many procedural due process claims are grounded on violations of state-created rights, as is the case here; rights that do not enjoy constitutional standing. However, the right to a hearing *prior* to the deprivation *is* of constitutional stature, and does not depend upon the nature of the right violated. The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right lies at the very heart of our constitutional democracy: the prevention of arbitrary use of government power.

■ Substantive due process, on the other hand, serves the goal of preventing "governmental power from being 'used for purposes of oppression,'" regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (citation omitted). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. For example, it can serve as a check on legislative enactments thought to infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking," hence oppressive, as to rise to the level of a substantive due process violation.

■ Procedural due process claims do not implicate the egregiousness of the action itself, but only question whether the process accorded prior to the deprivation was consti-

tutionally sufficient. And although the existence of a "protected" right must be the threshold determination, the focus of the inquiry centers on the *process* provided, rather than on the nature of the *right.* However, where the governmental decision causing a deprivation is made without any process where one is required, the inquiry shifts to the nature of the conduct causing the deprivation. That is, the question becomes whether the decision to deprive a person of a protected liberty interest was made more than negligently. *See id.* at 329–30, 106 S.Ct. at 663–64. Wanton and abusive behavior is not a constitutional prerequisite to liability in this context; the failure to provide due process, where the government is constitutionally required to do so, is in itself an arbitrary and unfair use of official power.

In short, substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards. The district court, by relying on substantive due process cases, appears to have assumed that the novel standard it created was necessary to analyze a substantive violation, rather than the procedural one which is the subject of this appeal.

■ The doctrinal distinctions undergirding the limitations each component imposes partly explain the different standards the Supreme Court has said are necessary to state a violation under each of the two components of the Due Process Clause. Although both substantive and procedural due process violations must "deprive" an individual of a protected constitutional interest, and the deprivation must be "arbitrary in the constitutional sense," *Collins v. City of Harker Heights,* 503 U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261 (1992), each imposes upon a plaintiff a different burden to state a cognizable claim.

At least as it applies to the facts of this case, we know from *Daniels* that "arbitrary in the constitutional sense" for procedural due process purposes means conduct undertaken with something more than negligence. For a claim brought under substantive due

process where a non-fundamental right is implicated, the plaintiff must show that the conduct "shocks the conscience" of the court. *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir.1993); *see Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952).

■ Finally, section 1983 contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right.... But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state of claim.

*Daniels,* 474 U.S. at 330, 106 S.Ct. at 664. So for example, just as in Fourth Amendment violations claims a plaintiff must prove that the official conduct was "unreasonable," so in deprivation of liberty claims brought under the procedural component of the Due Process Clause, a plaintiff must prove something more than negligence.

### III.

#### A.

■ Once it has been established that a plaintiff has asserted a protectible liberty interest, as this court has already determined to be the case in *Howard I,* the procedural due process inquiry has two components: a state-of-mind determination and a relevant conduct determination. This court has interpreted *Daniels* to require that, to state a cognizable section 1983 claim based on the deprivation of procedural due process, conduct must be grossly negligent, deliberately indifferent, or intentional. *See Howard I,* 6 F.3d. at 415; *and Franklin v. Aycock,* 795 F.2d 1253, 1262 (6th Cir.1986).

■ In a post-deprivation case the "relevant action" refers to the decision effecting the deprivation, and not to the failure to afford adequate procedures. *Id.* As the Supreme Court said in *Daniels,* 474 U.S. at 333–34, 106 S.Ct. at 666–67, "We think the relevant action of the prison officials ... is their deliberate decision to deprive the in-

mate of good-time credit, not their hypothetically negligent failure to accord him the procedural protection of the Due Process Clause." Although the Court's understanding of the objective and function of procedural due process has shifted between fairness, reduction of error, and the goal of providing an individual the right to be heard in a meaningful manner, where process is altogether denied, the inquiry must focus on the conduct effecting the deprivation, for the government's omission was already erroneous. That is, the constitutional inquiry no longer addresses what process was due and whether it was constitutionally sufficient, but whether the decision to *deprive* was itself constitutionally ·defective. *See Loudermill,* 470 U.S. at 541–42, 105 S.Ct. at 1492–93. It would be inconsistent with any articulable rationale underlying due process to focus on the failure to provide process when the deprivation has already occurred without it.

With this backdrop, this court in *Howard I* directed the district court to determine whether the defendants' relevant conduct had been grossly negligent or "deliberately indifferent," hence "intentional."

The district court held that the defendants were not liable to Howard because their failure to deny him a hearing was not based on "ulterior motive[s]," nor had any of the defendants expressed any "animus" toward Howard, nor did they have "unspoken reason[s]" for their conduct. We find this novel standard to be wholly unsupported by existing law, contrary to our instructions upon remand, and erroneous because it applies to the decision to deny a hearing rather than to the decision to place Howard in protective segregation and to keep him there.

### B.

*Franklin* helps to define the meaning of "intentional" conduct, and *Farmer v. Brennan,* — U.S. —, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), sheds light on the meaning of "deliberate indifference."

We find *Franklin* controlling in this case. *Franklin* involved an inmate's claim that he was placed in protective segregation without being given notice or a hearing, alleging that he was only placed there as punishment. *Franklin,* 795 F.2d at 1255. Finding support in *Daniels,* this court held that the appropriate inquiry must focus on the *conduct* of the defendants, rather than on the *process* denied, to determine whether placing Franklin in disciplinary segregation without affording him a hearing was a deprivation in the constitutional sense. *See id.* at 1262. Thus, this court stated that "the 'relevant action' in the present case is the Disciplinary Board's 'deliberate decision' to place Franklin in disciplinary segregation." *Id.* This court found irrelevant whether the decision to deny Franklin due process was negligent. *Id.* Rather, the deliberateness of the decision to place Franklin in disciplinary segregation without affording him a written ·statement as the prison regulations required, · was · what amounted to an intentional deprivation of a protected liberty interest. *Id.* This court found the defendants' conduct ."intentional," thus actionable under section 1983. *Id.*

The conduct was intentional because there were no facts indicating that Franklin was placed in segregation by mistake, inadvertently, or placed there temporarily and forgotten. In all relevant aspects, the decision to place him there had nothing to do with the hypothetically negligent failure to deny him a hearing. Therefore, for purpose of this appeal we hold that the knowing placement of a prisoner in administrative segregation in violation of prison rules is in itself an "intentional" act. *Sourbeer v. Robinson,* 791 F.2d 1094, 1105 (3d Cir.1986), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 779 (1987). "We know of no author·ity for the proposition that an intentional deprivation of life, liberty or property does not give rise to a due process violation because the failure to provide due process [may have been] without fault." *Id.*

"Deliberate indifference" requires a similar but distinct inquiry. The Supreme Court recently defined the term as it applies in the Eighth Amendment context. *Farmer,* — U.S. —, 114 S.Ct. 1970, 128 L.Ed.2d 811. *Farmer* was a *Bivens* suit wherein the plaintiff alleged violations of his Eighth Amendment rights, claiming that prison officials denied him ·humane conditions of confine-

ment. *Id.* at ——, 114 S.Ct. at 1974. The Court held that at a minimum, "deliberate indifference" requires more than negligence or carelessness. *Id.* at ——, 114 S.Ct. at 1978. However, it is "clear" that the term does not require "purpose[fulness] of causing harm," or "knowledge that harm will result." *Id.* It is fair to say, the Court stated, that the term is the "equivalent of recklessly disregarding" a risk of harm. *Id.* After considering several variations of the term as understood in the civil law, the Court held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at ——, 114 S.Ct. at 1979.

The Court rejected petitioner's request that it adopt an objective deliberate indifference test as articulated by the Court in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). *City of Canton* was a substantive due process case brought under section 1983 where the Court had held that "deliberate indifference" in that context was an objective standard, imposing on prison officials "'actual or constructive notice'" of the "'obvious[ness]'" of an alleged violation. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1981 (quoting *City of Canton, supra*). The Court held, however, that an "objective" deliberate indifference test would be inappropriate in Eighth Amendment cases because "'only the unnecessary and wanton infliction of pain'" carries liability. *Id.* at ——, 114 S.Ct. at 1977 (citation omitted). That is, unlike procedural due process deprivations, a deprivation asserted under the Eighth Amendment requires proof that a prison official have a "'sufficiently culpable state of mind.'" *Id.* (citation omitted).

▆ The Court thus implied that *Farmer*'s definition of "deliberate indifference" does not apply to section 1983 actions where

"the 'term [is] used ... for the quite different purpose of identifying the threshold for holding a [government] responsible for [a] constitutional tort[ ].'" *Id.* at ——, 114 S.Ct. at 1981 (citations omitted). We therefore hold that "deliberate indifference" in this post-deprivation context is an objective standard addressing a prison official's failure to act when he has actual or constructive knowledge of an obvious prison rule violation.

▆ There is no place in an inquiry applying any of these standards for a prerequisite finding of personal animosity, ulterior motives, unspoken reasons, or face-to-face contact. A prison official's motivation, or lack thereof, is simply irrelevant in a post-deprivation procedural due process case. If the conduct resulting in the deprivation is intentional or deliberately indifferent, a constitutional violation results even if the decision to deprive was made with the best of motives.

## IV.

▆ Howard claims this court should award him damages because remanding the case to the lower court will only result in another appeal. However, the award of damages in a section 1983 action depends on a factual inquiry that must be developed in the first instance by the district court. *See Franklin,* 795 F.2d at 1263–64. This court can affirm or reverse a judgment only on the record before it. *Witters v. Washington Dep't of Services for the Blind,* 474 U.S. 481, 486 n. 3, 106 S.Ct. 748, 751 n. 3, 88 L.Ed.2d 846 (1986). It is not appropriate for an appellate court to consider issues that have not been the subject of factual developments in prior proceedings. *See id.* We do not conduct evidentiary hearings or hear witnesses. *See United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985).

We instruct the district court, on remand, to rely on *Franklin* on the question of damages should it determine that the defendants in this case acted intentionally or deliberately indifferent in depriving Howard of a protected liberty interest. *See Franklin,* 795 F.2d at 1263–65.

V.

The decision of the district court is **RE-VERSED** and the case is once again **RE-MANDED,** and the district court is directed to apply the appropriate legal standards as we have articulated them.