**Roger J. JENKINS, Jr., Plaintiff,**

v.

**John J. HUTTON, Jr., M.D., Defendant.**

No. C–1–95–367.

United States District Court,
S.D. Ohio,
Western Division.

June 11, 1997.

William Bernard Singer, Schwartz, Manes & Ruby, Cincinnati, OH, for Roger Jenkins, Jr.

Gregory Parker Rogers, Taft, Stettinius & Hollister, Cincinnati, OH, for John J. Hutton, Jr., MD.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's motion for summary judgment (doc. 5), Defendant's motion for summary judgment (doc. 6), Plaintiff's reply and response to Defendant's motion (doc. 8) and Defendant's reply (doc. 9).

### BACKGROUND

This action arises out of the University of Cincinnati College of Medicine's decision to dismiss a medical student. Plaintiff, Roger Jenkins Jr., filed this action seeking an injunction under 42 U.S.C. § 1983 ordering the College of Medicine to grant him his medical degree.

Mr. Jenkins was a medical student at the University of Cincinnati College of Medicine. Mr. Jenkins graduated from Amherst College in May 1988, and he entered the College of Medicine in the summer of 1988. Mr. Jenkins timely completed the first two years of medical school with passing grades in all his classes.

In the "Academic Performance Standards Guidelines for Promotion Boards" (the "Guidelines"), the College of Medicine sets minimum requirements for advancement. Failure to meet any of the requirements will result in dismissal for poor scholarship.

The medical school program is divided into two two-year sequences. The first two-year sequence consists primarily of lecture-based course work. At the end of the second year, all medical students are required to take Part I of the National Board of Medical Examination ("NBME–I"). A student must pass the NBME–I before he or she may begin his or her fourth year classes. The third and fourth years are devoted to clinical rotations.

Generally, a student only has two years to complete each of the sequences. The College of Medicine offers an "Individual Advancement" option which allows a student an additional year to complete either two-year academic program. A student who takes three years to complete the clinical biennium (i.e. third and fourth year of medical school) will have his/her progress monitored by the Promotion Board.[1] A student can take up to six years to complete the medical school program but no more than one additional year for each of the two-year sequences. In addition, the College of Medicine may grant a student a leave of absence which does not count towards the six year cap.

Mr. Jenkins failed the NBME–I when he took it after his second year in June 1990. Mr. Jenkins also failed to show up for his third year classes in July 1990. More than a month after third year course work began, Mr. Jenkins requested a leave of absence in order to devote his full energies to taking the NBME–I. The College of Medicine granted the request. Mr. Jenkins, however, did not take the NBME–I as scheduled in June 1991.

Mr. Jenkins was called before the Promotion Board in November 1991, to discuss his delay in retaking the NBME–I. Mr. Jenkins failed to appear at the Board meeting. He was called to attend another Promotion Board meeting in March 1992. Mr.

---

1. A group of faculty charged by the College of Medicine Guidelines to evaluate medical students' performance.

Jenkins appeared at the meeting and was informed by the Board that he must take the NBME–I in June 1992. Mr. Jenkins again did not take the exam. In a letter dated November 30, 1992, the Promotion Board informed Mr. Jenkins that he could not begin his fourth year course work until he passed the NBME–I. The Promotion Board also placed Mr. Jenkins on Individual Advancement which required him to complete his final two years of medical school in three years. Thus, Mr. Jenkins was told he must complete all his course work by graduation day, June, 1994. In addition, the Board stated that it would not grant him any additional leaves of absence.

Mr. Jenkins took the third-year course work during the 1991–92 academic year. During the 1992–93 academic year, Mr. Jenkins took only one course and studied for the NBME–I. Mr. Jenkins passed the NBME–I in June 1993. Thus, Mr. Jenkins had until June 1994, to complete his final year of course work.

Mr. Jenkins did well in his fourth year clinical course work, receiving high pass or honors in every rotation. Mr. Jenkins, however, failed to register for and complete his final rotation until after graduation on June 11, 1994.

The Promotion Board met on June 15, 1994, to discuss Mr. Jenkins' status. Mr. Jenkins was present and addressed the Board. After discussing the issue, the Board unanimously decided to follow their Guidelines and recommended Mr. Jenkins' dismissal. Mr. Jenkins appealed the Promotion Board's recommendation to the Academic Appeal Board ("Appeal Board"). Mr. Jenkins appeared before the Appeal Board. The Appeal Board affirmed the decision of the Promotion Board. The Acting Dean, Andrew Filak Jr., M.D., upheld the decision to dismiss Mr. Jenkins.

Mr. Jenkins was dismissed for "failure to complete the prescribed course of study in the specified time frame." Mr. Jenkins challenges the College of Medicine's decision to dismiss him as a violation of substantive and procedural due process. Both Parties have now moved for summary judgment.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551–52; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## DISCUSSION

Mr. Jenkins filed a four count Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. Essentially, Mr. Jenkins alleges that his substantive and procedural due process rights were violated when the College of Medicine dismissed him as a medical student.

■ In order to state a claim under 42 U.S.C. § 1983, the plaintiff must allege (1) the deprivation of a constitutional or federal right and (2) that the deprivation was caused by a person acting under the color of state law. *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991); *Bird v. Summit County, Ohio,* 730 F.2d 442, 444 (6th Cir.1984)(the violation must be predicated on a deprivation of a constitutional right).

■ In this case, Mr. Jenkins alleges that the College of Medicine violated the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment forbids any State from "depriv[ing] any person of life, liberty, or property, without due process of law." The Due Process Clause has both a procedural and a substantive component. *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996).

> Courts have analyzed § 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process. Violations of substantive due process are further divided into two kinds: (1) deprivation of a particular constitutional guarantee and (2) actions that "government officials may not take no matter what procedural protections accompany them," alternatively known as actions that "shock the conscience."

*Braley v. City of Pontiac,* 906 F.2d 220, 224–25 (6th Cir.1990).

## I. Procedural Due Process

■ Procedural Due Process "delineates the constitutional limits on judicial, executive and administrative *enforcement* of legislative or other governmental dictates or decisions." Laurence Tribe, *American Constitutional Law,* § 10–7 at 664 (2d ed.1988). The procedural due process component defines what process a person must receive before being deprived of a life, liberty, or property interest. *Howard,* 82 F.3d at 1349.

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim to it." *Id.* at 577, 92 S.Ct. at 2709.

■ The Constitution does not create the property interest, but rather, the property interest is created by an independent source such as a state law which creates a claim of entitlement. *Id.* Thus, in order to determine whether Mr. Jenkins is entitled to procedural due process, the Court must determine if the College of Medicine's decision to dismiss him implicated a liberty or property interest possessed by Mr. Jenkins.

In *Board of Curators, University of Mo. v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Supreme Court faced a nearly identical question. In *Horowitz,* a medical student was dismissed by the school's Council of Evaluation in her final year for failure to meet academic standards. *Id.* at 80, 98 S.Ct. at 950. Plaintiff argued that her dismissal deprived her of her "liberty" by impairing her ability to continue her medical career. *Id.* Before dismissing the plaintiff, the school informed her of their dissatisfaction with her performance and allowed her to "appeal" this conclusion through a practical examination. Seven physicians reviewed her "appeal" and issued recommendations to the Evaluation Committee regarding whether she should be dismissed from

school. *Id.* at 81, 98 S.Ct. at 950–51. The Court found it unnecessary to determine whether the plaintiff had a protected liberty interest in pursing her medical career because the Court found she received all of the process required by the Fourteenth Amendment. *Id.* at 84–85, 98 S.Ct. at 952–53. The Court stated that academic dismissals required less procedural safeguards than disciplinary dismissals. Disciplinary proceedings are similar to traditional administrative or judicial factfindings while academic evaluations are more subjective. *Id.* at 89–90, 98 S.Ct. at 954–55. Thus, dismissal of a student for academic reasons "comports with the requirements of due process if the student had prior notice of faculty dissatisfaction with his or her performance, and if the decision to dismiss the student was careful and deliberate." *Schuler v. University of Minnesota,* 788 F.2d 510, 514 (8th Cir.1986).

■ Likewise, Mr. Jenkins received adequate process regardless of whether he possess a protected liberty or property interest in receiving his medical degree. Here, the College of Medicine's dismissal of Mr. Jenkins was an academic dismissal. *See Horowitz,* 435 U.S. at 91 n. 6, 98 S.Ct. at 955 n. 6 (stating that hygiene and timeliness may be important factors to determine whether a medical student will be a good doctor). Nonetheless, Mr. Jenkins received adequate procedural safeguards for any liberty or property interest he may have in his medical career. The Promotion Board provided Mr. Jenkins notice of his need to complete his course work by graduation 1994 and their dissatisfaction with his attention to administrative tasks and deadlines. *See id.* at 85, 98 S.Ct. at 952 ("The School informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment."). In addition, Mr. Jenkins was given several opportunities to address both the Promotion Board and the Appeal Board.

## II. Substantive Due Process

■ "Substantive due process . . . protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' " *Gutzwiller v. Fenik,* 860 F.2d 1317, 1328 (6th Cir.1988) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937)). Substantive due process prevents certain oppressive action on the part of the government regardless of the fairness of the procedures used. *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996). Furthermore, substantive due process protects certain fundamental rights from infringement and restricts certain government action considered so oppressive that it shocks the conscience. *Id.* Unlike the rights protected by procedural due process, substantive due process only protects rights created by the Constitution.

Thus, Mr. Jenkins must show either (1) the College of Medicine arbitrarily and capriciously denied his fundamental right to pursue his education, or (2) the College's actions were so egregious so as to shock the conscience of the Court.

Mr. Jenkins contends that his right to pursue a medical career is protected by substantive due process. *Citing Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957) (finding that the Due Process Clause precludes exclusion from the practice of law on grounds with no rational connection to one's ability to practice law).

Courts are split on the question whether a graduate level student has a constitutionally protected interest in completing his education. *Compare, e.g., Thomas v. Gee,* 850 F.Supp. 665, 675–76 (S.D.Ohio 1994) (holding that the right to pursue an education is not a fundamental right protected against arbitrary action by substantive due process), *with Stoller v. College of Medicine,* 562 F.Supp. 403, 412 (M.D.Pa.1983); *aff'd,* 727 F.2d 1101 (3rd Cir.1984) (finding student has constitutionally protected interest in continuing his medical education and holding substantive due process requires that his education not be terminated for "arbitrary or capricious" reasons).

It is unnecessary for the Court to determine whether Mr. Jenkins has a fundamental right in completing his medical education because he has failed to demonstrate that his dismissal was arbitrary and capricious, or motivated by bad faith or ill will unrelated to his academic performance. *See Schuler v. University of Minnesota*, 788 F.2d 510, 515 (8th Cir.1986) (assuming student had cause of action under substantive due process for challenging dismissal from graduate program but dismissing the action for failure to show arbitrary action).

Mr. Jenkins contends that it is improper for the College of Medicine, through the Promotion and Appeal Boards, to determine whether a student is "unfit to enter the medical profession." Mr. Jenkins argues that the use of this criteria for dismissing students gives the College of Medicine "standardless discretion."

We disagree. The Promotion Board dismissed Mr. Jenkins for failing to follow the College of Medicine's Guidelines. The Guidelines clearly state that a student must complete the final two years of medical school in three years. Mr. Jenkins was put on notice of these requirements. He, however, failed to meet the established Guidelines for graduation. It is not arbitrary and capricious for a college to enforce its academic requirements strictly and evenhandedly. Furthermore, Mr. Jenkins has not alleged that the College of Medicine has failed to enforce these Guidelines in other situations. Therefore, we hold that the College of Medicine's actions were not arbitrary and capricious, and therefore, did not violate substantive due process.

Furthermore, it does not shock the conscience of the Court that the College of Medicine took into consideration a student's ability to timely complete administrative tasks in order to determine whether to dismiss that student. *See Horowitz*, 435 U.S. at 91 n. 6, 98 S.Ct. at 955 n. 6 (finding that timeliness is an appropriate factor for determining whether a medical student would make a good doctor).

## CONCLUSION

Accordingly, the Court DENIES Plaintiff's motion for summary Judgment and GRANTS Defendant's motion for summary judgment. The Court hereby DISMISSES this action.

SO ORDERED.