[Cite as *In re Raheem L.*, 2013-Ohio-2423.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: RAHEEM L.  :  APPEAL NO. C-100608
TRIAL NO. 09-8835X

:

:  *O P I N I O N.*


Criminal Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 12, 2013


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Office of the Ohio Public Defender*, and *Amanda J. Powell*, Assistant State Public Defender, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   In this appeal, we consider whether the legislature may authorize juvenile courts to punish children for delinquency into their adulthood under the Due Course Clause of Article I, Section 16, of the Ohio Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For the following reasons, we hold that these constitutional provisions place no such restriction on the legislature, and we, therefore, affirm the judgment of the juvenile court.

{¶2}   Raheem L. was adjudicated a delinquent child for committing an act when he was 16 years old that would have constituted gross sexual imposition, in violation of R.C. 2907.05(A)(4), had he been an adult. The Hamilton County Juvenile Court committed Raheem to the legal custody of the Department of Youth Services until his 21st birthday, but suspended that commitment and placed him on probation. The juvenile court further classified Raheem as a juvenile offender registrant and a Tier II sex offender/child-victim offender under R.C. 2152.83(A). This triggered the so-called punitive registration requirements of R.C. Chapter 2950, as amended by 2007 Am.Sub.S.B. No. 10 (the "Adam Walsh Act"), for a maximum compliance period of 20 years. R.C. 2950.07(B)(2). *See State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 15 ("Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive."); *In re D.J.S.*, 130 Ohio St.3d 257, 2011-Ohio-5342, 957 N.E.2d 291 (applying *Williams* to juvenile offender registrants). Although he may later petition for declassification, because Raheem was classified as a juvenile offender registrant under R.C. 2152.83(A), he cannot do so until three years after he completes his disposition. *See* R.C. 2152.84 and 2152.85. Given the length of his

suspended commitment, his first opportunity for declassification will, therefore, occur when he is approximately 24 years old.

{¶3} In his single assignment of error, Raheem argues that by imposing punishment for delinquency that will extend beyond his 21st birthday, the juvenile court violated his right to due process under the state and federal constitutions.

{¶4} We begin our analysis by turning to the relevant constitutional provisions. The Due Course Clause of the Ohio Constitution provides that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law," and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits any state from depriving "any person of life, liberty, or property, without due process of law * * * ." Despite their different wording, the Ohio Supreme Court has held that these provisions afford "equivalent" protections. *See Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). We, therefore, analyze each clause similarly absent any argument to treat them differently. *See State ex rel. O'Brien v. Heimlich*, 10th Dist. No. 08AP-521, 2009-Ohio-1550, ¶ 23.

{¶5} The United States Supreme Court has recognized that the Due Process Clause has both procedural and substantive components. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 719-720, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997). "The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996). "Although the distinctions between the two are often difficult to discern, and indeed often appear to converge, the doctrinal foundation upon which these limitations were erected helps to explain the different standards applicable to each and to sharpen the focus of analysis." *Id.*

**{¶6}** Procedural due process requires "that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475, (6th Cir.2004), citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It "also embodies the concept of fundamental fairness." *Sohi v. State Dental Bd.*, 130 Ohio App.3d 414, 422, 720 N.E.2d 187 (1st Dist.1998). Over the past half-century, courts have relied on these principles to extend many of the same procedural guarantees applicable in criminal prosecutions to juvenile delinquency proceedings. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 71-81, explaining *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that a juvenile and his or her parents must be informed of certain rights, including the juvenile's right to be represented by counsel and to have counsel appointed if his or her family cannot afford an attorney, the right not to be forced to incriminate himself or herself, the right to written notice of the specific charges against him or her, and the right to confront and cross-examine witnesses) and its progeny.

**{¶7}** Substantive due process, meanwhile, "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." (Emphasis sic.) *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). "Fundamental rights are those liberties that are 'deeply rooted in this Nation's history and tradition.' " *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 19, quoting *Moore v. E. Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). We are extremely reluctant to recognize new fundamental rights "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Hts.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117

L.Ed.2d 261 (1992), citing *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225-226, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). As Chief Justice Rehnquist aptly noted, "[b]y extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. 2302, 138 L.Ed.2d 722. Courts must, therefore, " 'exercise the utmost care whenever [they] are asked to break new ground in this field' * * * lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of individual judges. *Id.,* quoting *Collins* at 125, and citing *Moore* at 502.

{¶8} If no fundamental right has been implicated, we must decide only whether the statute at issue "is reasonably related to a legitimate government interest." *Lowe* at ¶ 18. Under this test, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *United States v. Comstock*, 560 U.S. 126, ___, 130 S.Ct. 1949, 1966, 176 L.Ed.2d 878 (2010), quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-488, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

{¶9} Raheem has not alleged any procedural deficiency in the classification of juvenile offender registrants under R.C. 2152.83(A). *Compare In re D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209 (holding that due process does not require a jury when imposing a serious youthful offender dispositional sentence under R.C. 2152.13). Instead, he simply argues that his classification—together with its attendant punitive registration requirements—violates his due-process rights by extending punishment for his delinquency into his adulthood. We understand this assigned error as invoking substantive due process. *See In re I.A.*, 2d Dist. No. 25078, 2012-Ohio-

4973, ¶ 6 (applying substantive-due-process analysis where a delinquent child argued that R.C. Chapter 2950, as amended by the Adam Walsh Act, cannot be applied to juveniles because the law is punitive).

{¶10} Raheem cites no case law that recognizes the fundamental right of a child to avoid punishment for delinquency that extends beyond the child's 21st birthday. Moreover, he provides no basis for us to say that such a right is deeply rooted in our nation's history and tradition. Since their inception, the juvenile courts have constantly evolved as policymakers and courts have grappled with "the inherent tension * * * between the goals of rehabilitation and the protection of society." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 75. We believe that tying a fundamental right to this moving target would be unwise. Further, we note that on two recent occasions, the Ohio Supreme Court has upheld various aspects of the blended-sentencing framework, which incorporates prison terms for delinquency that are served beyond the child's 21st birthday. *See In re D.H.*, *supra*; *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203. We, therefore, conclude that no fundamental right has been implicated in this case.

{¶11} We turn then to whether such punishment is rationally related to a legitimate government interest. The General Assembly has provided that the overriding purposes for juvenile-court dispositions are "to provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01. Although the Ohio Supreme Court has stressed the importance of rehabilitation in the juvenile-court system, it has also recognized that the state has "valid interests in enforcing its criminal laws against juveniles and, in at least some

6

cases, in requesting that the juvenile court impose significant penalties in their dispositions * * * ." *In re C.S.* at ¶ 77. With this in mind, together with our highly-deferential standard of review, we cannot say that the punishment authorized by R.C. 2152.83(A) is irrational.

{¶12} Raheem has, therefore, failed to show that either the Due Course Clause of the Ohio Constitution or the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit the juvenile courts from punishing a child for delinquency into adulthood. The single assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, J.,** concurs.
**CUNNINGHAM, P.J.,** dissents.

**CUNNINGHAM, P.J.,** dissenting.

{¶13} For juvenile offenders like Raheem L., R.C. 2152.83(A) mandates that the juvenile court "shall issue as part of the dispositional order * * * an order that classifies the child a juvenile offender registrant" and that specifies the child's duties of periodic registration with the sheriff. Because R.C. 2152.83(A) removes the essential, discretionary role of the juvenile court in the disposition of a juvenile offender registrant, and abandons the heightened goal of the rehabilitation of the offender, the juvenile offender cannot avoid the adult portion of his disposition by successfully completing his juvenile rehabilitation. The adult portion of his disposition is thus fundamentally unfair and the juvenile offender is denied due process. Therefore, I respectfully dissent.

{¶14} The overall goal of R.C. Chapter 2152 is found in the first sentences of R.C. 2152.01(A). The statute lists five distinct purposes for juvenile dispositions. And the first purpose is "to provide for the care, protection, mental and physical development of

7

children subject to this chapter." Only then are the interests in ensuring public safety, restoring the victim, and holding the juvenile offender accountable addressed as purposes of a juvenile disposition. In the final sentence of the section, the General Assembly instructs that these "purposes shall be achieved by a system of *graduated* sanctions and services." *Id.* (Emphasis added.)

{¶15} Three years ago, our colleague, a former long-serving juvenile court judge, warned that, "Whenever a juvenile court judge's discretion is removed in favor of mandatory judicial action, there is the possibility for consequences that contradict the stated purpose of the very law that judge is sworn to uphold." *In re Moore*, 1st Dist. Nos. C-090576, C-090577, and C-090578, 2010-Ohio-3991, ¶ 29-30 (Hendon, J., concurring). That admonition is crystallized in the mandatory and automatic application of the adult sanctions of R.C. 2152.83 to juvenile sex offenders.

{¶16} In its recent decision, *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, syllabus, the Ohio Supreme Court held that the automatic, lifelong registration and notification requirements, placed on more serious juvenile sex offenders by R.C. 2152.86, violate the constitutional proscription against cruel and unusual punishment, and violate the Due Process Clauses of the federal and Ohio constitutions. The court noted that "[t]he disposition of a child is so different from the sentencing of an adult that fundamental fairness to the child demands the unique expertise of a juvenile judge." *Id.* at ¶ 76, citing *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 59.

{¶17} When a statutory scheme seeking to impose adult penalties on juvenile offenders retains the juvenile court's key role in the disposition of an offender, it passes constitutional muster. As the majority noted, in *State v. D.H.*, the Ohio Supreme Court upheld the application of adult prison terms to juvenile offenders in blended-sentencing cases, including the imposition of prison sentences that extend beyond the offender's 21st

birthday. But the adult prison penalty cannot be automatically imposed at the time of disposition. It is stayed "unless the juvenile fails to successfully complete his or her traditional juvenile disposition." *D.H.* at ¶ 18, citing R.C. 2152.13(D)(2)(a)(iii). The threat of the adult sentence thus "encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick." *D.H.* at ¶ 18. Moreover, the juvenile court cannot impose the adult sentence solely for the acts that led to the juvenile's blended sentence. "Only further bad acts by the juvenile as he is rehabilitated in the juvenile system can cause the stayed adult penalty to be invoked." *C.P.* at 15; *see D.H.* at ¶ 18. Even then, the juvenile court has the discretion to avoid invoking the adult penalty. Before lifting the stay, the juvenile court must make a finding, supported by clear and convincing evidence, that its efforts to rehabilitate the juvenile have failed, and that the juvenile is "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction." R.C. 2151.14(E)(1)(c); *see D.H.* at ¶ 31.

{¶18} When, however, an adult penalty is imposed immediately upon disposition, and "the juvenile is not given the opportunity to avoid the adult portion of his punishment by successfully completing his juvenile rehabilitation," the sentence imposed is fundamentally unfair and the juvenile offender is denied due process. *C.P.* at ¶ 16.

{¶19} Here, the juvenile court has neither carrot nor stick with which to attempt to rehabilitate the offender. Rather than employing a system of graduated sanctions and services, the juvenile court must label the offender as a juvenile offender registrant solely for the commission of the act that led to his adjudication. No additional act, signaling a possible failure of rehabilitation, is required. The automatically imposed registration obligations extend beyond the offender's 21st birthday, "anchor[ing] the juvenile offender to his crime." *C.P.* at ¶ 47. And the court must impose this sanction at the beginning of its rehabilitative efforts, rather than at the end when it has concluded that the offender's rehabilitation has failed and that, now, the focus of the juvenile court's

efforts must shift solely to the protection of the public from a juvenile unwilling or unable to conform to society's norms of behavior. Here, Raheem L.'s mandatory classification occurred and the sanctions were imposed less than seven weeks after the initial complaint had been filed.

{¶20} I note that the Ohio Supreme Court has catalogued the significant differences between the automatic lifelong notification and registration requirements for public-registry-qualified juvenile offender registrants, under R.C. 2152.86, and the penalties imposed on other juvenile offender registrants like Raheem L. *See C.P.* at ¶ 20 et seq. But R.C. 2152.83(A) also mandates a "penalty that extends well beyond the age at which the juvenile court loses jurisdiction" as "a consequence that attaches immediately and leaves [him] with no means of avoiding the penalty by demonstrating that he will benefit from rehabilitative opportunities." *C.P.* at ¶ 24. Therefore, I would find that R.C. 2152.83(A), like R.C. 2152.86, denies a juvenile the fundamental fairness guaranteed by the Due Process Clauses of the federal and Ohio constitutions.

{¶21} Finally, as the majority correctly notes, Raheem L.'s first opportunity to petition the juvenile court "judge who made the classification, or that judge's successor in office," to end his 20-year classification would arise when he is 24 years old. *See* R.C. 2152.84(A)(2) and 2152.85. Yet two recent Ohio Supreme Court decisions highlight the difficulties he might face in having the juvenile court judge who made the classification exercise jurisdiction over his petition. *See State ex rel. Jean-Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 32 ("[T]he juvenile court lacks jurisdiction to classify [a juvenile sex offender], who is now no longer a 'child' under the applicable statute."); *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203 ("[J]uvenile courts do not have jurisdiction over adjudicated delinquents once they are 21 years old.").

{¶22} For these reasons, I respectfully dissent.

Please note:

The court has recorded its own entry this date.